HARRY R. WITTE

*v.*

THE STATE OF ILLINOIS.

*Opinion filed September 19, 1902.*

MILITIA—*State liable for death of member killed while at target practice under orders.* State is liable for death of an officer of the National Guard killed at target practice while performing his duties as such officer, in pursuance of lawful orders from the Commander in Chief.

The petition in this case was originally filed by Harry R. Witte, administrator of the estate of Edward R. Witte, deceased.

The record shows that the said Edward R. Witte, deceased, was, on the 4th day of October, 1901, the second lieutenant of Company C, 3d Reg. Inf., Illinois National Guard, which company was located at Ottawa, and commanded by Captain Sidney R. Blanchard. The claim arises out of the accidental shooting on said date, of the said Edward R. Witte, at the rifle range of said Company, just east of the city limits of the city of Ottawa, from the effects of which shooting he died on the 7th day of October, 1901, and is brought under Section 4 of Article 9, of Chap. 129, Revised Statutes of Illinois, entitled, "State Militia," or "Military and Naval Code of the State of Illinois," which section was added as an amendment to said article by act approved May 11, 1901, and in force July 1, 1901.

The section is as follows: "In every case where an officer, soldier or seaman of the Illinois National Guard or the Naval Militia of Illinois shall be killed or wounded while performing his duties as officer, soldier or seaman in pursuance of lawful orders from the Commander in Chief, said officer, soldier or seaman, or his legal heirs shall have a claim against the State for financial help or assistance, and the State Board of Claims shall act on and adjust the same as the merits of each case demand."

This section of the statute has never been construed by this Commission, and in the oral argument of the case, the point was raised whether the proceeding should have been commenced in the name of the administrator of the said Edward R. Witte, deceased, or his legal heirs, and claimants' attorneys asked leave to amend their petition by adding "Alice Witte, widow, and Nelson Witte, only son, by Alice Witte, his next friend, sole heirs of Edward R. Witte, deceased," as claimants. No objection was made to the amendment and it was allowed, leaving the question to this Commission to determine to whom an award should be made if at all.

The claim is resisted, however, by the Attorney General, on the ground that no award can be made in this case to any one, under the evidence in the record and a proper construction of the law.

We will first pass on the evidence and then on the question to whom the award should be made, if at all.

The record shows that the range in question was originally constructed with private funds of the company, sometime in 1900, pursuant to orders and directions emanating from the general inspector of rifle practice of the State of Illinois, no funds being available from the State in that year for rifle ranges, except for Springfield and Ft. Logan; that in 1901 there was allowed from the State appropriations, upon the recommendation of the general inspector of rifle practice, to further equip this range, the sum of $125.00; that on May 28, 1901, a general order No. 10, was issued by order of the Commander in Chief and published and distributed for the information and guidance of the officers and enlisted men of the Illinois National Guard, approving the rules and regulations for the government of target practice, during the season of 1901, submitted by the general inspector of rifle practice. Sec. I of Art. 5 of the Military and Naval Code, provides that the general inspector of rifle practice shall have charge of the rifle practice throughout the State and shall superintend the manner in which the same shall be conducted, under the orders of the Com-

mander in Chief. These rules provide that each company shall have certain terms of yearly service or practice with the rifle upon the range and that the rifle season will open June 1st and close October 31st, 1901.

Captain Blanchard testified that his company was composed principally of business men and it was impracticable for any large number of the men to get away to the rifle range at any one time; that on October 4, 1901, most of the men had completed their firing for the year and their scores had been handed in and filed; that very few of the men qualified to shoot from the 800 and 1,000 yards ranges; that those who had qualified to shoot at 800 and 1,000 yards had nearly all completed their firing at these ranges and were through for the year; that among the men who were qualified to pass to the higher ranges, but who had not as yet completed their firing for the year were Captain Blanchard himself, and Robert Strohmeyer, a corporal in said company; that Edward R. Witte, deceased, had already qualified as a sharpshooter and had completed his firing for the year and made his score at 800 and 1,000 yards ranges; that on said date, Lieutenant Witte telephoned him that he would be at liberty from his business that afternoon to do the marking, if any of those who had qualified could get away; that he replied that he could go and that as Strohmeyer had also qualified that he had better go also.

He further testified that he then ordered and directed Witte to go to the range that afternoon and told him to order Strohmeyer to go also if he could leave his work, and that afterwards, he, himself, gave orders to Strohmeyer to go; that he, Lieutenant Witte and Corporal Strohmeyer repaired to the range that afternoon, arriving there about one thirty o'clock, pursuant to orders, as aforesaid; that he assumed charge of the range and Witte and Strohmeyer were from first to last, under his immediate supervision and directions; that Lieutenant Witte was stationed by him at the target house to do the

marking and did no firing himself upon that day; that the range had been equipped with a telephone, one instrument being in the target house and another that could be attached and detached at will, from the connections at each station from 300 yards back to and including 1,000 yards range; that it was not necessary to use the telephone up to the 600 yards range, but that beyond the 600 yards range, after a shot was fired, the marker at the target house would step out in front of the target, get the value of the shot, step back into the house and telephone it to the scorer at the other end of the line, and then step back and paste up the hole in the target, and then return to the target house and telephone the scorer that all was ready for the next shot, and not until this was done, and until the scorer received this second message and communicated it to the man on the firing stand, did the marksman have any right to fire another shot.

The whole construction of the range and the position of the targets are explained by the Captain in his testimony, but suffice it to say that all that is necessary to be repeated in this opinion is what we have already stated and that Captain Blanchard had finished firing at 1,000 yards and Strohmeyer had taken position for firing at that range. At that range, the marksman lies down on the firing platform on his back with his feet crossed at the ankles, pointing toward the target and the barrel of his rifle resting in the crotch formed by the crossed ankles and feet. This method of firing is called the "Texas Grip." Strohmeyer had fired five shots from this range while in that position, completing one score. Captain Blanchard stood with his back to Strohmeyer about two feet away doing the scoring. At the conclusion of the score, Lieutenant Witte telephoned from the target house the value of the last shot. Captain Blanchard had just stated to Strohmeyer that he had made fourteen on that score, that he ought to do better on the next. At that insant, Strohmeyer became confused and fired the first shot on the next score, without waiting to be noti-

fied by the Captain that the marker had telephoned that all was clear for the next shot, or that he should fire. On that afternoon, Lieutenant Witte was dressed in straw colored trousers and a light undershirt. The evidence shows that the 1,000 yards target was 12 feet wide and 6 feet high, made of heavy buff paper, supported by cloth stretched over a wooden frame. The bull's eye in the center of the target was black and about four feet high and 18 to 22 inches wide.

Captain Blanchard and Corporal Strohmeyer both testify that it was impossible to see Witte, while standing against the buff back ground of the target, with the naked eye. Failing to get any answer from the target house after the last shot, Strohmeyer ran to the place and there found Witte lying in the trench, mortally wounded from the effects of his last shot.

It appears from the evidence of the location of the wound, and the mark made by the bullet on the target, that Witte had just completed pasting over the last shot hole and had turned partly around to go back to shelter. He was at once conveyed to the hospital in the city of Ottawa and died from the effects of the shot on the 7th of October following.

It appears from the evidence that neither of the three men were intoxicated; that Strohmeyer and Witte were good friends, and that they had excellent habits, and we are satisfied that the shooting of Witte by Strohmeyer was purely accidental.

The record also shows by the evidence of the attending physicians of Witte, that his death was caused from the shot received while on the range. The evidence of Captain Blanchard and Corporal Strohmeyer, the only persons present, are practically the same in regard to the circumstances connected with the accident.

We believe from the evidence of the witnesses contained in the record, taken in connection with general order No. 10, issued by order of the Commander in Chief, in 1901, and Section I, Article 5 of the Military and Naval

Code, giving the general inspector of rifle practice charge of the rifle practice throughout the State, under the orders of the Commander in Chief, that Lieutenant Witte was an officer of the Illinois National Guard and that he was mortally wounded on the 4th day of October, 1901, from the effects of which wound he died on the 7th day of October, 1901, while performing his duties as such officer, in pursuance of lawful orders from the Commander in Chief, and that, under the section under which this claim arises, an award should be made to some one.

The Commission is of the opinion that an award should be made in favor of the legal heirs of Edward R. Witte, deceased. The evidence does not, however, disclose the names of the legal heirs and as no good purpose would be subserved by continuing this case for the additional proof, we therefore make an award in favor of Harry R. Witte, administrator of the estate of Edward R. Witte, deceased, for the sum of three thousand dollars ($3,000), for the exclusive use and benefit of the legal heirs of Edward R. Witte, deceased, to be distributed by said administrator under the order and direction of the Probate Court of La Salle county, Illinois.